Docket No. 83426–Agenda 6–September 1998.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. 

 DALE ATKINSON, Appellee.

Opinion filed June 17, 1999.

JUSTICE BILANDIC delivered the opinion of the court:

Defendant, Dale Atkinson, was charged by information in Vermilion County with one count of burglary for knowingly entering a motor vehicle, without authority, with intent to commit theft (720 ILCS 5/19–1(a) (West 1994)). A jury returned a verdict finding defendant guilty of burglary on the basis of accountability. The trial court sentenced defendant to six years’ imprisonment. The appellate court, with one justice dissenting, reversed defendant’s conviction and remanded for a new trial, finding reversible error in the admission of defendant’s two prior burglary convictions for impeachment purposes. 288 Ill. App. 3d 102. We allowed the State’s petition for leave to appeal (166 Ill. 2d R. 315) and now reverse the appellate court’s judgment and reinstate defendant’s conviction and sentence.

FACTS

Evidence adduced at trial showed that on March 17, 1994, around 9:30 p.m., Nathan Reitsma was driving his mother’s 1984 Chrysler LeBaron, when the car stalled on Oakwood Avenue in Danville, Illinois. Nathan testified that he parked and locked the car alongside the road and proceeded to a nearby store to call his mother. When he returned to the car about 15 to 20 minutes later, he discovered that a window had been “pried down” and that the dashboard had been torn apart. The AM-FM cassette stereo and an equalizer had been removed from the dashboard.

That same evening, Herb Simmons was driving his car along with three passengers, defendant, Dale Juvinall, and Steve Robbins. Simmons testified that they were in the area of Oakwood Avenue when they noticed a stalled car on the side of the road. Simmons stopped the car, and defendant and Juvinall got out of the car. Simmons left defendant and Juvinall so that his car would not be seen if “they did something.” He returned about 10 to 15 minutes later and picked up defendant and Juvinall. Juvinall had stereo equipment inside his coat when he reentered Simmons’ car. They proceeded to defendant’s trailer, where Juvinall “split up” the stereo and equalizer, which had been connected. Juvinall kept the equalizer and gave the stereo to defendant. Simmons and Juvinall left in Simmons’ car with the equalizer underneath the passenger seat. Later that same evening, the police stopped Simmons and Juvinall and confiscated the equalizer from the car.

Dale Juvinall testified for the State that on March 17, 1994, he was riding in a car with defendant, Simmons, and Robbins. Around 10 p.m., they stopped by a stalled car on Oakwood Avenue. Juvinall requested that they stop by the stalled car because he wanted to see if that car had a stereo system. Juvinall and defendant approached the stalled car, which was unlocked. Juvinall opened the door and removed the stereo and equalizer. While Juvinall removed the items from the car, defendant stood next to him. Juvinall handed defendant the stereo, which defendant thereafter kept in his possession. When Simmons returned to pick them up, Juvinall was holding the equalizer and defendant was holding the stereo. After unsuccessfully trying to sell the equalizer, they went to defendant’s house and dropped him off with the stereo. Juvinall confirmed that later that evening police arrested him and Simmons after recovering the equalizer from the car.

Mark Drollinger, an investigator with the Vermilion County sheriff’s department, investigated the burglary of the Reitsma car. Drollinger interviewed defendant on March 21, 1994. According to Drollinger, defendant consented to his making an audio tape of their interview, which was later admitted into evidence and played to the jury. In that interview, defendant stated that on the evening of March 17, 1994, he was riding in Simmons’ car with Juvinall and Robbins. After approaching a stalled vehicle on Oakwood Avenue, Juvinall stated that he saw a “fuzz buster.” Juvinall exited Simmons’ car and entered the stalled vehicle, which he unlocked by reaching through an open window. Juvinall then removed the stereo and the equalizer from the dashboard. Defendant admitted getting out of Simmons’ car because of “stupidity,” and standing nearby while Juvinall removed the equipment from the stalled car. Defendant did not go into the stalled car. After Simmons picked them up, they returned to defendant’s house and left the stereo there. Defendant admitted to subsequently trading that stereo to Chris Hunt for a different stereo. Following defendant’s interview, Drollinger located Chris Hunt and recovered the stolen stereo from him.

Defendant testified at trial that, on March 17, 1994, he was in Simmons’ car with Juvinall and Robbins when Juvinall and Simmons saw a car with personalized license plates, which they thought contained a stereo. Juvinall wanted to see if the car also had a fuzz buster. Defendant admitted on cross-examination that the only reason to check for a fuzz buster was to steal it. Simmons pulled over in front of the stalled car. Juvinall exited Simmons’ car and asked defendant to accompany him. Defendant testified that he stepped out of Simmons’ car and stood by the side of the road. Juvinall climbed into the stalled car through an open window and pulled at the bottom of the dashboard. Defendant stated that he did not do anything to assist Juvinall. Defendant also denied being a lookout; however, he did notice that no one was around or was coming down the street. When Juvinall exited the stalled car, he had a stereo and an equalizer, which were taped together with black electrical tape. Simmons picked up Juvinall and defendant and drove them to defendant’s trailer, where Simmons separated the stereo and the equalizer. Defendant was given the stereo, which he “got rid of” a few days later.

Following defendant’s testimony the State sought to present, for impeachment purposes, evidence of defendant’s two prior burglary convictions. Defense counsel objected to their publication to the jury and claimed that the probative value of the two convictions was outweighed by their prejudicial effect. In the alternative, defense counsel asserted that the jury should be informed only that defendant had two prior felony convictions, and the date of the convictions. The trial court denied defendant’s requests. Accordingly, the State impeached defendant with evidence of his two prior burglary convictions. Specifically, the State informed the jury that defendant’s two prior convictions were for burglary, and that these convictions occurred in Vermilion County on September 9, 1992, and January 11, 1993. Defendant filed a motion for a mistrial, arguing that the State should not have been allowed to publish the nature of defendant’s prior convictions to the jury. The trial court denied the motion for a mistrial. The jury found defendant guilty of burglary on an accountability theory. The trial court entered a judgment on the verdict and sentenced defendant to six years’ imprisonment. The trial court denied defendant’s post-trial motion for a new trial.

The appellate court, with one justice dissenting, reversed defendant’s conviction and remanded for a new trial. The appellate court held that the trial court erred when it permitted the State to reveal to the jury the nature of defendant’s prior convictions. 288 Ill. App. 3d at 107. The court determined that the trial court should have employed the “mere-fact” method of impeachment as part of its balancing test in deciding whether the probative value of the evidence sought to be admitted is substantially outweighed by the danger of unfair prejudice. 288 Ill. App. 3d at 107. The appellate court found that the jury in this case should have heard only the “mere fact” that defendant had twice been convicted of unidentified felonies. The appellate court concluded that the trial court’s error was prejudicial and not harmless to defendant because the evidence of defendant’s guilt was not overwhelming. 288 Ill. App. 3d at 108. The appellate court remanded the cause for a new trial. The dissenting opinion stated that, absent precedent from this court requiring application of the mere-fact approach, defendant’s conviction was not obtained in error because the trial court had applied the required balancing test. 288 Ill. App. 3d at 109 (Green, J., dissenting).

ANALYSIS

The issue before this court is whether the mere-fact method of impeachment should be adopted in Illinois.

This court’s opinion in 
People v. Montgomery
, 47 Ill. 2d 510 (1971), generally governs the use of prior convictions to impeach a witness’ credibility. In 
Montgomery
, this court adopted the then-proposed Federal Rule of Evidence 609 as the general rule governing the admissibility of prior convictions to impeach the credibility of a witness. 
Montgomery
, 47 Ill. 2d at 519; see also M. Graham, Cleary & Graham’s Handbook of Illinois Evidence §§609.1, 609.2 (6th ed. 1994). Under the 
Montgomery
 rule, evidence of a witness’ prior conviction is admissible to attack the witness’ credibility where: (1) the prior crime was punishable by death or imprisonment in excess of one year, or involved dishonesty or false statement regardless of the punishment, (2) less than 10 years has elapsed since the date of conviction of the prior crime or release of the witness from confinement, whichever is later, and (3) the probative value of admitting the prior conviction outweighs the danger of unfair prejudice. 
Montgomery
, 47 Ill. 2d at 516; see also M. Graham, Cleary & Graham’s Handbook of Illinois Evidence §609.2 (6th ed. 1994). This last factor requires the trial judge to conduct a balancing test, weighing the prior conviction’s probative value against its potential prejudice.

In conducting this balancing test, the trial judge should consider, 
inter alia
, the nature of the prior conviction, its recency and similarity to the present charge, other circumstances surrounding the prior conviction, and the length of the witness’ criminal record. 
Montgomery, 
47 Ill. 2d at 518; see also 6 L. Pieczynski, Illinois Practice §22.68 (West 1989); M. Graham, Cleary & Graham’s Handbook of Illinois Evidence §609.4 (6th ed. 1994). If the trial judge determines that the prejudice substantially outweighs the probative value of admitting the evidence, then the evidence of the prior conviction must be excluded. The determination of whether a witness’ prior conviction is admissible for impeachment purposes is within the discretion of the trial court. 
Montgomery
, 47 Ill. 2d at 517-18.

The adoption of the mere-fact method of admitting evidence of a prior conviction for impeachment purposes was proposed in a concurring opinion in 
People v. Kunze
, 193 Ill. App. 3d 708, 728-36 (1990) (Steigmann, J., specially concurring). The mere-fact method of impeachment informs the jury only of the “mere fact” of a witness’ prior conviction, but not the nature of that conviction. 
Kunze
, 193 Ill. App. 3d at 731. Consequently, the jury learns only of the fact that the witness committed a past crime, not the name of the offense.

Defendant contends that the mere-fact method of admitting a prior conviction for impeachment purposes should be used by trial courts as part of the 
Montgomery
 balancing test. Defendant advocates that the trial court should consider employing the mere-

fact method in determining whether the probative value of the defendant’s prior conviction is substantially outweighed by the danger of unfair prejudice. Thus, the trial court could determine that prejudice to the defendant would be alleviated if only the mere fact of the prior conviction was introduced and could decide to allow use of the prior conviction only in that fashion.

This court has not previously addressed whether the mere-fact method of impeachment has any place in the 
Montgomery
 analysis. The State contends that we implicitly refused to adopt the mere-fact approach in 
People v. Redd
, 135 Ill. 2d 252, 324-26 (1990). In 
Redd
, we concluded that the trial court properly denied the motion of defendant, who was on trial for rape and murder. That motion sought to bar the use of the defendant’s prior convictions for rape and attempted murder as impeachment evidence or, in the alternative, sought to delete the subject matter of the prior convictions and replace it with the word “felony.” We held that the trial judge had properly exercised the discretion envisioned under the 
Montgomery
 rule. 
Redd
, 135 Ill. 2d at 326. We did not, however, explicitly address in 
Redd
 whether the mere-

fact method could ever be an appropriate part of the 
Montgomery
 analysis.

We now decline to adopt the mere-fact method of impeachment for the following reasons. The three-prong approach adopted in 
Montgomery
 has guided our court’s analysis of this issue for many years and has recently been reaffirmed. See 
People v. Williams
, 173 Ill. 2d 48, 82-83 (1996) (holding that the admission of a witness’ prior conviction as evidence of impeachment is governed exclusively by the three-prong test set forth in 
Montgomery
). In adopting this test in 
Montgomery
, this court recognized the importance of balancing a defendant’s interest against unfair prejudice with that of the State and the jury to dispose of the charge in accordance with the truth. See 
Montgomery
, 47 Ill. 2d at 518. Our case law interpreting 
Montgomery
 suggests that it is the nature of a past conviction, not merely the fact of it, that aids the jury in assessing a witness’ credibility. See, 
e.g.
, 
Williams
, 173 Ill. 2d at 81-83; 
Redd
, 135 Ill. 2d at 324-26. The mere-fact approach undermines the 
Montgomery
 rule and inhibits the jury’s evaluation of a witness’ credibility by eliminating the jury’s consideration of the nature of the past crime.

For similar reasons, the Seventh Circuit Court of Appeals has declined to adopt the mere-fact approach. See 
Campbell v. Greer
, 831 F.2d 700, 707 (7th Cir. 1987) (allowing an inmate’s prior conviction for rape to be disclosed for the purpose of impeaching his credibility as a witness in the civil rights case he brought against prison officials). That court made the following observations in support of disclosing the nature of a witness’ prior felony conviction:

“There is no precedent for withholding the identity of the felony from the jury when using a conviction to impeach a witness’s testimony, and we are not minded to create one. Most jurors have only an indistinct sense of the range of offenses connoted by the term ‘felony.’ *** Rule 609 and the common law tradition out of which it evolved rest on the common-sense proposition that a person who has flouted society’s most fundamental norms, as embodied in its felony statutes, is less likely than other members of society to be deterred from lying under oath in a trial by the solemnity of the oath, the (minuscule) danger of prosecution for perjury, or internalized ethical norms against lying. If so, this is something a jury should be permitted to take into account in evaluating a witness’s believability. The jury cannot do this if all it is told is that the witness was convicted of a ‘felony.’ The crime must be named. It always has been where impeachment by a prior conviction has been permitted.”
 Campbell
, 831 F.2d at 707.

The court further found that a jury is entitled to know the name of the crime because, without that knowledge, the jury would be confused and Federal Rule of Evidence 609 would be undermined. 
Campbell
, 831 F.2d at 707.

Potential prejudice to the defendant also supports rejection of the mere-fact approach. Under the mere-fact approach, the jury hears direct proof that the accused has been convicted of a felony, the exact nature of which is excluded from the jury. This bare announcement unavoidably invites jury speculation about the nature of the prior crime. There is a potential danger that the jury would speculate that the defendant was previously convicted of a more serious crime. Consequently, the mere-fact approach may result in unfair prejudice to the defendant arising from jury speculation as to the nature of the prior unnamed crime. Under the 
Montgomery
 rule, however, there is no potential for speculation by the jury. Moreover, the possibility of resulting prejudice to the defendant from revealing the nature of the prior conviction is controlled by the judicial balancing test set forth in the third prong of 
Montgomery
. Under that test, if prejudice to the defendant substantially outweighs the probative value of admitting the impeachment evidence, the prior conviction must be excluded.

Defendant relies on the United States Supreme Court’s decision in 
Old Chief v. United States, 
519 U.S. 172, 136 L. Ed. 2d 574, 117 S. Ct. 644 (1997), as support for employing the mere-

fact approach in conducting the 
Montgomery
 balancing test. In 
Old Chief
, the defendant, who was on trial for the federal offense of possession of a firearm by a felon, offered to concede the fact of his prior conviction. The defendant therefore requested that the jury be informed only that the defendant had a prior felony conviction and not the nature of the felony. The trial court denied the defendant’s request and admitted the record of the defendant’s prior conviction. In addressing whether the trial court abused its discretion, the Supreme Court considered the scope of Federal Rule of Evidence 403, which authorizes the exclusion of relevant evidence when its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. In discussing the various methods of applying Rule 403 to weigh the probative value of evidence, the Court referred to “evidentiary alternatives” as opposed to specifically naming the defendant’s prior felony offense. 
Old Chief
, 519 U.S. at 184-85, 136 L. Ed. 2d at 590, 117 S. Ct. at 652. The Court determined that further proof of the underlying felony was unnecessary in that case because Congress made it plain that the fact of the felony conviction alone is what matters under the statute. 
Old Chief
, 519 U.S. at 190, 136 L. Ed. 2d at 594, 117 S. Ct. at 655. The Supreme Court therefore held that the trial court abused its discretion under Rule 403 when it refused to consider “evidentiary alternatives” and instead allowed evidence of the name of the defendant’s prior felony offense to be presented to the jury. The Court, however, limited its holding to cases involving proof of felon status with respect to a federal statute outlawing possession of a firearm by a felon. 
Old Chief
, 519 U. S. at 183 n.7, 136 L. Ed. 2d at 589 n.7, 117 S. Ct. at 651 n.7.

The circumstances involved in 
Old Chief
 indicate that the Court’s decision has no application to this case. 
Old Chief
 involved neither the admission of a prior conviction as impeachment evidence nor a general discussion of Federal Rule of Evidence 609. See 
United States v. Smith
, 131 F.3d 685, 687 (7th Cir. 1997) (explaining that the prior conviction in 
Old Chief
 was not used for impeachment purposes under Rule 609). Rather, the holding in
 Old Chief
 was limited to the application of Rule 403 in the context of the federal statute at issue in the case. 
Old Chief
, therefore, does not support the adoption of the mere-fact method of introducing evidence of prior convictions for impeachment purposes.

We conclude that the 
Montgomery
 rule should not be altered by the mere-fact approach. The 
Montgomery
 rule, which balances the jury’s role in evaluating a witness’ credibility with unfair prejudice to the defendant, shall continue undisturbed as the method governing admission of evidence of a prior conviction to impeach the credibility of a witness. Thus, trial courts should not consider the mere-fact method of impeachment.

As a final matter, we find that the trial court did not abuse its discretion in holding that evidence of defendant’s prior convictions of burglary should be admitted for impeachment purposes pursuant to the 
Montgomery
 rule. Defendant’s prior burglary convictions were admissible pursuant to the first prong of the 
Montgomery
 rule because burglary is a crime punishable by more than one year of imprisonment. In addition, a period of less than 10 years has elapsed since the date of defendant’s prior convictions. The trial judge was therefore required to weigh the probative value of admitting the prior burglary convictions against the danger of unfair prejudice. Defendant’s testimony at trial made up his entire defense. Defendant’s credibility was therefore a central issue, and the prior convictions were crucial in measuring defendant’s credibility. The trial judge thus did not abuse his discretion in finding that the probative value of admitting these prior convictions was not outweighed by the danger of unfair prejudice to the defendant. See 
Williams
, 173 Ill. 2d at 83 (holding that the trial court did not abuse its discretion in denying the defendant’s motion to bar the State from impeaching the defendant’s credibility with evidence of his prior conviction for aggravated battery where the defendant was on trial for murder and aggravated battery with a firearm); 
Redd
, 135 Ill. 2d at 326 (holding that the trial court did not abuse its discretion in denying the defendant’s motion to bar the use of his prior convictions for rape and attempted murder as impeachment evidence in a case where the defendant was on trial for murder and rape).

Defendant nonetheless contends that the trial court erred because it failed to conduct a proper 
Montgomery
 balancing test. We disagree. Defense counsel specifically referred to the balancing test in his argument against impeaching defendant with his prior convictions. The trial judge, in discussing the admissibility of defendant’s prior convictions, recognized that he had to determine whether the probative value of the evidence outweighed its prejudice. The trial judge again referred to the 
Montgomery
 rule and its balancing test when denying defendant’s motion for a mistrial and denying defendant’s post-trial motion for a new trial. Defendant argued in both motions that the nature of his prior burglary convictions should not have been published to the jury, and that doing so resulted in prejudice to him. In denying defendant’s motion for a mistrial, the trial court indicated that it “makes no sense” to impeach a defendant any other way under “
Montgomery
.” In denying defendant’s motion for a new trial, the trial judge stated that “
Montgomery
 is a well tried and well-tested rule that has been followed by the courts to determine believability of witnesses and defendants,” and the question under 
Montgomery
 is “whether the prejudice outweighs any probative value.” It is clear from the trial judge’s comments that he was aware of the 
Montgomery
 balancing test. The trial judge did not err in failing to articulate the factors he considered in his application of the 
Montgomery
 balancing test. See 
Williams
, 173 Ill. 2d at 83 (determining that the trial judge did not disregard the 
Montgomery
 rule merely because he did not explicitly state for the record that he was balancing the opposing interests). In light of the trial judge’s comments, there is no reason to find that the trial court failed to weigh the probative value of the evidence against its possible prejudicial effect in determining the impeachment evidence to be admissible. We therefore find that the trial court conducted a proper balancing test and thereby adhered to the 
Montgomery
 rule.

In so finding, we emphasize that trial courts should be cautious in admitting prior convictions for the same crime as the crime charged. Nonetheless, similarity alone does not mandate exclusion of the prior conviction. See 
Redd
, 135 Ill. 2d at 326. Here, the trial court strictly limited the use of the prior convictions by providing the jury with an instruction limiting their evidentiary use to impeachment. Specifically, the trial court instructed the jury to consider defendant’s prior burglary convictions only for the purpose of assessing defendant’s credibility as a witness, and not as evidence of his guilt of the offense charged. Accordingly, the trial court did not abuse its discretion in admitting defendant’s prior burglary convictions for impeachment purposes.

We therefore reverse the appellate court because it erred in concluding that the trial court committed reversible error in refusing to apply the mere-fact method of admitting evidence of defendant’s prior convictions. We reject the mere-fact approach, and we affirm the trial court’s admission of defendant’s prior convictions pursuant to the 
Montgomery
 rule.

CONCLUSION

For the reasons stated, we reverse the judgment of the appellate court and affirm defendant’s conviction and sentence.

Appellate court judgment reversed;

circuit court judgment affirmed.

JUSTICE RATHJE, dissenting:

The majority concludes that, even if the trial court finds that the mere-fact approach is the most appropriate method of presenting to a jury evidence of a defendant’s prior conviction, the trial court is prohibited from using that method. Such a conclusion is unwarranted, unnecessary, and overly broad. Historically, this court has vested the trial court with great discretion to determine what evidence should be presented at trial. See 
People v. Gilliam
, 172 Ill. 2d 484, 513 (1996) (recognizing that “the admission of evidence is within the sound discretion of the trial court”). Furthermore, whether evidence of a prior conviction may be introduced as impeachment is a question that lies within the sound discretion of the trial court. 
People v. Williams
, 173 Ill. 2d 48, 81 (1996) (
Williams II
). Given the wide discretion afforded the trial courts, I fail to see the basis for the majority’s conclusion that, as a matter of law, it always is improper to use the mere-fact approach to impeach a testifying defendant.

The admission of a defendant’s prior conviction to impeach his credibility is governed by the test set forth in 
People v. Montgomery
, 47 Ill. 2d 510 (1971). The 
Montgomery
 court held that, for purposes of attacking credibility, evidence of a prior conviction is admissible only if (1) the crime was punishable by death or imprisonment in excess of one year; or (2) the crime involved dishonesty or false statement, regardless of the punishment. 
Montgomery
, 47 Ill. 2d at 516, 519. In either case, however, evidence of the conviction is inadmissible if the trial court determines that the probative value of the conviction is substantially outweighed by the danger of unfair prejudice. 
Montgomery
, 47 Ill. 2d at 516, 519.

When used for impeachment, a defendant’s prior convictions are not introduced to prove that the defendant is a bad person, “ ‘but rather to show background facts which bear directly on whether jurors ought to believe him rather than other and conflicting witnesses.’ ” 
People v. Williams
, 161 Ill. 2d 1, 37 (1994) (
Williams I
), quoting 
Gordon v. United States
, 383 F.2d 936, 940 (D.C. Cir. 1967). The probative value of prior convictions of crimes of dishonesty or false statement is easily seen. The terms “dishonesty” and “false statement” refer to crimes such as perjury, subornation of perjury, false statement, criminal fraud, embezzlement, false pretenses, other offenses in the nature of 
crimen falsi
, and theft. See 
People v. Spates
, 77 Ill. 2d 193, 201-04 (1979). These crimes all involve some element of deceit, untruthfulness, or falsification, character traits that bear directly upon the accused’s propensity to testify truthfully. 
Spates
, 77 Ill. 2d at 204. With respect to crimes involving dishonesty or false statement, the nature of the crime is probative of the defendant’s veracity.

As for prior felony convictions, however, it is not the nature of the crime that bears on the defendant’s veracity, but rather the fact that the defendant committed a felony. The impeachment value of these crimes rests upon the premise that “a person with a criminal record has a bad general character, evidenced by his willingness to disobey the law, and that his bad general character would lead him to disregard his oath to testify truthfully.” M. Graham, Cleary & Graham’s Handbook of Illinois Evidence §609.1, at 452 (7th ed. 1999). As early as 1884, Justice Holmes recognized this principle, explaining that a felony punishable by imprisonment is admissible for impeachment because it demonstrates a “general readiness to do evil,” and that, from this “general disposition alone,” the jury is allowed “to infer a readiness to lie in the particular case.” 
Gertz v. Fitchburg R.R. Co.
, 137 Mass. 77, 78 (1884). Thus, although these crimes do not directly call defendant’s credibility into question, they are relevant because they reflect adversely on his general character.

In 
Williams II
, this court noted that some language in 
Williams I
 could indicate that this court “no longer approved of the common rationale that a witness’ prior felony conviction may by itself evince disrespect for social order and therefore supply a proper basis for impeachment.” 
Williams II
, 173 Ill. 2d at 82. This court then explained, however, that this was not the case and that it continued to adhere to the three-part test established in 
Montgomery
. 
Williams II
, 173 Ill. 2d at 83. Thus, not only have this court’s past rulings been based on the common law belief that a prior felony conviction by itself evinces a disrespect for social order that is relevant for impeachment, but this court has also recently and explicitly reaffirmed its continued adherence to that belief.

Given the clear distinction between the two types of convictions available for impeachment and the great discretion vested in the trial court, I believe that a framework can be established within which the trial court may determine whether, in a particular situation, the mere-fact approach should be used. If the defendant objects to the introduction of a prior conviction, the trial court should apply the 
Montgomery
 test. If, after analyzing the conviction under the 
Montgomery
 test, the trial court determines that the conviction or convictions can be admitted, the defendant may request that the jury be informed only that he has been convicted of a felony and not of the particular felony of which he has been convicted. If the trial court determines that the mere-fact approach would lessen the possible prejudice to the defendant while not substantially affecting the probative value of the evidence of the prior conviction, it should permit impeachment only by the mere-fact approach.

Under this framework, the mere-fact approach should not be used with respect to prior convictions of crimes of dishonesty or false statement. This is because the nature of the conviction is probative of the defendant’s untruthfulness, and the use of the mere-fact approach would clearly lessen the probative value of the conviction. Further, in cases where no similarity exists between the crime charged and the prior felony conviction, less chance exists that the possible prejudice would be affected by the mere-fact approach. Consequently, in those cases, unless the prior felony conviction is particularly heinous when compared with the crime for which the defendant is charged, the mere-fact approach normally should not be used.

The danger arises in cases where the prior conviction is similar to the crime charged. Indeed, “[t]he more similar the prior offense to the crime charged, the stronger the natural though impermissible inference likely to be drawn by the jury that, if the defendant did it before, he probably did it this time.” M. Graham, Cleary & Graham’s Handbook of Illinois Evidence §609.1, at 453 (7th ed. 1999). In such cases, the possible prejudice will certainly be lessened if the conviction is referred to only as a felony. Consequently, unless the probative value of the prior conviction would be substantially lessened by informing the jury only that the defendant has a prior felony conviction, the trial court should grant the defendant’s request to use the mere-fact approach.

In sum, the mere-fact approach is consistent with the wide discretion afforded the trial court and comports with our concept of a fair trial. The mere-fact approach minimizes the potential prejudice to the defendant by replacing the name of a particularly heinous crime or a crime similar to the one with which the defendant is charged with the term “felony.” Such an approach prevents the jury from concluding that the defendant is guilty of the crime charged simply because he previously committed a similar crime or a particularly offensive crime. If, in certain circumstances, the mere-fact approach reduces the potential prejudice without substantially affecting the probative value of the prior conviction, then this court, by prohibiting the trial court from using the mere-fact approach, has abandoned its duty to ensure that the defendant receives a fair trial.

Notwithstanding the numerous considerations operating in favor of the mere-fact approach, the majority offers four reasons to reject it, none of which are persuasive. First, the majority asserts that, “The three-prong approach adopted in 
Montgomery
 has guided our court’s analysis of this issue for many years and has recently been reaffirmed.” Slip op. at 6. While this is undeniably true, it in no way precludes a trial court from employing the mere-fact approach. This is so because the trial court should consider whether to apply the mere-fact approach only after it has applied the 
Montgomery
 test and concluded that evidence of the prior conviction is admissible for impeachment. Consequently, since the mere-fact approach would be considered only after the 
Montgomery
 test is applied, the adoption of the mere-fact approach would not interfere with the trial court’s application of the 
Montgomery
 test.

Next, the majority asserts that, “[o]ur case law interpreting 
Montgomery
 suggests that it is the nature of a past conviction, not merely the fact of it, that aids the jury in assessing a witness’ credibility.” Slip op.
 
at 6. This conclusion is supported neither by the cases the majority relies upon nor by our past jurisprudence.

The majority asserts that 
Williams II
 and 
People v. Redd
, 135 Ill. 2d 252 (1990), support the assertion that it is the nature of the felony conviction rather than the fact of it that it is relevant to assessing the defendant’s credibility. As explained above, however, 
Williams II
 states that this court continues to adhere to the principle that evidence of prior felony convictions is admissible as impeachment not because of the nature of the felony but because the crimes committed are felonies. See 
Williams II
, 173 Ill. 2d at 82. Similarly, this court’s discussion in 
Redd
 did not concern the question of why prior felony convictions are permitted as impeachment; instead, it discussed only the question of whether the trial court properly applied the 
Montgomery
 test. See 
Redd
, 135 Ill. 2d at 324-26. Consequently, our case law interpreting 
Montgomery
 more closely supports the position that it is the fact of the felony conviction and not its nature that is relevant for impeachment.

The majority next relies upon 
Campbell v. Greer
, 831 F.2d 700 (7th Cir. 1987), an opinion from the Seventh Circuit Court of Appeals. The majority quotes the following language from 
Campbell
:

“ ‘There is no precedent for withholding the identity of the felony from the jury when using a conviction to impeach a witness’s testimony, and we are not minded to create one. Most jurors have only an indistinct sense of the range of offenses connoted by the term “felony.” *** Rule 609 and the common law tradition out of which it evolved rest on the common-sense proposition that a person who has flouted society’s most fundamental norms, as embodied in its felony statutes, is less likely than other members of society to be deterred from lying under oath in a trial by the solemnity of the oath, the (minuscule) danger of prosecution for perjury, or internalized ethical norms against lying. If so, this is something a jury should be permitted to take into account in evaluating a witness’s believability. The jury cannot do this if all it is told is that the witness was convicted of a “felony.” The crime must be named. It always has been where impeachment by a prior conviction has been permitted.’ ” Slip op. at 7 (omission in original), quoting 
Campbell
, 831 F.2d at 707.

The court’s reasoning in 
Campbell
 suffers from two fatal flaws. First, it begins and ends with statements that are factually inaccurate. Second, the conclusion that it draws is not supported by the argument presented.

Campbell
 asserts that “no precedent” exists to support the concept of informing the jury only of the mere fact of a defendant’s conviction. It also concludes that the crime must be named because this has always been the rule. When the 
Campbell
 opinion was issued, at least 11 states permitted impeachment by prior felony convictions to be shown either only by the mere-fact approach or left it to the trial court’s discretion to use the mere-

fact approach.
(footnote: 0) Thus, the 
Campbell
 court was incorrect when it asserted that no authority existed to support the use of the mere-

fact approach and that impeachment by a prior conviction has always required the crime to be named.

The 
Campbell
 court correctly acknowledged that impeachment by use of a prior felony conviction is allowed because it is believed that “a person who has flouted society’s most fundamental norms *** is less likely than other members of society to be deterred from lying under oath.” 
Campbell
, 831 F.2d at 707. The court clearly recognized that it is therefore the fact of the conviction rather than its nature that is relevant. Inexplicably, however, the court then stated that the jury cannot consider the impeachment value of a prior felony conviction without knowing the nature of the felony conviction. This conclusion simply does not follow from the argument that it is the fact of the commission of the crime that supports the inference that the person is more likely not to testify truthfully.

The final reason given by the majority to prohibit the trial court from using the mere-fact approach is to avoid “[p]otential prejudice to the defendant.” Slip op. at 7. The possible potential for prejudice is easily remedied because the mere-fact approach should only be used if the defendant requests it. If the defendant makes the strategic decision that he is better off if the jury knows only that he has been convicted of a felony and not the nature of the felony, the State should not be in a position to complain that the defendant is possibly subjecting himself to greater prejudice. This decision, while perhaps not easy to make, is certainly no more difficult than the myriad of other strategic evidentiary decisions facing a defense attorney during a trial. Because neither the trial court nor the State would be responsible for the defendant’s decision whether to request the use of the mere-fact approach, neither could be charged with attempting to further prejudice the defendant.

Consequently, trial courts should be permitted to exercise their discretion to determine whether to apply the mere-fact approach. Here, defendant specifically asked the trial court to consider using the mere-fact approach. The trial court rejected defendant’s request not because it found that the mere-fact approach should not be used in this particular case, but because the court believed that it lacked the authority to consider using the mere-fact method. Although the majority opinion removes from the trial court the discretion to determine whether or to what extent evidence is admissible, I believe that the trial court should retain that discretion. Here, the trial court abused its discretion when it refused to consider using the mere-fact method.

I would therefore reverse defendant’s convictions and remand this cause for a new trial at which the trial court should consider defendant’s request to use the mere-fact approach.

JUSTICE McMORROW joins in this dissent.

FOOTNOTES
0:     
1
City of Fairbanks v. Johnson
, 723 P.2d 79, 83-84 (Alaska 1986); 
State v. Geyer
, 194 Conn. 1, 15, 480 A.2d 489, 498 (1984);
 Fulton v. State
, 335 So. 2d 280, 284 (Fla. 1976); 
State v. Palin
, 106 Idaho 70, 74, 675 P.2d 49, 53 (App. 1983); 
Sebastian v. Commonwealth
, 436 S.W.2d 66, 69 (Ky. App. 1968); 
State v. Gray
, 152 Mont. 145, 156-57, 447 P.2d 475, 481 (1968); 
State v. Olsan
, 231 Neb. 214, 224, 436 N.W.2d 128 134 (1989); 
Plunkett v. State
, 84 Nev. 145, 147, 437 P.2d 92, 94 (1968); 
State v. Sims
, 298 Or. 360, 364, 692 P.2d 575, 577 (1984); 
State v. Means
, 363 N.W.2d 565, 569 (S.D. 1985); 
Voith v. Buser
, 83 Wis. 2d 540, 546, 266 N.W.2d 304, 307 (1978).