MICHAEL REICHERT, Plaintiff-Appellant, v. THE BOARD OF FIRE AND POLICE COMMISSIONERS OF THE CITY OF COLLINSVILLE *et al.*, Defendants-Appellees.

Fifth District    No. 5—07—0570

Opinion filed March 12, 2009.

Mark Levy, of Mark Levy, P.C., of Collinsville, for appellant.

Steven C. Giacoletto, of Giacoletto Law Office, P.C., of Collinsville, for appellee Scott Williams.

Thomas F. Hennessy III, of Greensfelder, Hemker & Gale, of Swansea, for appellee City of Collinsville.

John L. Bitzer, of Dunham, Boman & Leskera, of Collinsville, for other appellees.

PRESIDING JUSTICE WEXSTTEN delivered the opinion of the court:

In April 2006, the plaintiff, Michael Reichert, was discharged from the Collinsville police department by the Board of Fire and Police

Commissioners of the City of Collinsville (the Board). Thereafter, he sought judicial review of the Board's decision in the circuit court of Madison County, and in response, the defendants—the Board, the City of Collinsville, and Chief of Police Scott Williams—moved for a summary judgment. Following a hearing, the circuit court entered an order affirming the Board's decision and granting a summary judgment in favor of the defendants. The plaintiff now appeals the circuit court's order, which we reverse for the following reasons.

## BACKGROUND

In August 2005, in the United States District Court for the Southern District of Illinois (the district court), the plaintiff pled guilty to a charge of "Selling of Goods in Commerce at Unreasonably Low Prices Eliminating Competition," a federal misdemeanor punishable by a period of imprisonment of "not more than one year" (15 U.S.C. §13a (2000)). In exchange for his guilty plea, the plaintiff was sentenced to a two-year term of probation and fined $2,000. The stipulated facts underlying the plaintiff's plea established the following. From January 2004 through September 2004, the plaintiff sold "unlicensed or 'knockoff' sunglasses that were manufactured, distributed[,] and sold to look like Oakley sunglasses." While the cost of a genuine pair of Oakley sunglasses ranges from "approximately $100 to $300 depending on the model," the plaintiff sold the "imitation Oakley sunglasses" for $10 a pair knowing that they "were being sold at unreasonably low prices when compared with actual name[-] brand Oakley sunglasses" and knowing that "by distributing them in the Southern District of Illinois, he would be damaging the competition for the actual name[-]brand sunglasses in the area."

In November 2005, the district court entered a published memorandum and order (the *Zambrana* order), in which the court opined, *inter alia*, that evidence of the plaintiff's federal conviction would be admissible for impeachment purposes pursuant to Rules 608(b) and 609(a)(2) of the Federal Rules of Evidence (Fed. R. Evid. 608(b), 609(a)(2)). *United States v. Zambrana*, 402 F. Supp. 2d 953, 958-59 (2005). Emphasizing that the stipulated facts underlying the plaintiff's conviction stated that the plaintiff had sold sunglasses that were " '*sold to look like Oakley sunglasses*' " (emphasis in original), the district court reasoned that the plaintiff had "pled guilty to unlawfully selling goods which were represented to be something they were not" and had thereby admittedly "engaged in misrepresentation, deceit, and falsification." *Zambrana*, 402 F. Supp. 2d at 958-59. The district court therefore concluded that the plaintiff's conviction involved specific instances of conduct that would be admissible under

Rule 608(b) and that the conviction further constituted an offense involving dishonesty or false statement under Rule 609(a)(2). *Zambrana*, 402 F. Supp. 2d at 958-59.

In February 2006, Collinsville Chief of Police Scott Williams filed charges against the plaintiff pursuant to section 10—2.1—17 of the Illinois Municipal Code (65 ILCS 5/10—2.1—17 (West 2006)). The charges alleged that, in light of the plaintiff's federal conviction and the district court's determination that evidence of the conviction could be used to impeach his credibility, the State's Attorneys of Madison and St. Clair Counties "will view unfavorably [the plaintiff's] involvement in a criminal case as a material witness and will be less inclined, as a result, to authorize the prosecution of said case." In March 2006, the Board held a hearing on the charges, at which the following evidence was adduced.

Robert Haida testified that, since 1991, he has been the St. Clair County State's Attorney. As the county's chief prosecutor, Haida determines "whether or not allegations of state criminal offenses will be prosecuted in St. Clair County." Haida testified that he was aware that the plaintiff had pled guilty to an offense in federal court and that he was familiar with the district court's *Zambrana* order. Haida testified that in light of the plaintiff's conviction and the *Zambrana* order, his office would not charge or prosecute a case in which the plaintiff would be a material witness because of the "potential credibility issues." Haida explained that he is obligated to disclose "any and all relevant credibility issues" that a witness might have and that the judges in St. Clair County "have consistently allowed this kind of material to be used by defense attorneys."

When cross-examined, Haida testified that he had not read the statutory provision under which the plaintiff had been convicted and was not familiar with the elements of the plaintiff's offense. Haida indicated that his opinion that evidence of the plaintiff's conviction could be used for impeachment purposes was based on the *Zambrana* order and on past rulings made by St. Clair County judges when addressing similar situations. Haida indicated that his office would be unable to use the plaintiff as a witness because he believed that the plaintiff's conviction would be admissible for impeachment purposes. Haida acknowledged that other than the plaintiff's conviction, he was not aware of any other information that could be used to impeach the plaintiff. Haida further acknowledged that whether the plaintiff's conviction would be admissible for impeachment purposes would be determined by the judge in a particular case, but he explained that he was not willing to present the issue before a judge for the purpose of determining how the judge might rule on it.

Susan Jensen testified that she has been an assistant State's Attorney in Madison County for approximately 25 years. Jensen stated that in addition to prosecuting felony offenses, she is "responsible for meeting with the police and deciding whether cases are filed or charged as felonies." She testified that she was aware that the plaintiff had pled guilty to an offense in federal court and that she was further aware of the *Zambrana* order. She testified that in light of the plaintiff's conviction and the *Zambrana* order, she would not file charges in a case in which the plaintiff was the sole witness to an alleged offense. She further stated that if charges were filed in a case in which the plaintiff was not the sole witness to an alleged offense, she "would try to avoid having him testify." She explained that her views on the matter were representative of the policy of the Madison County State's Attorney's office. Jensen testified that part of the City of Collinsville is located in Madison County and part of it is located in St. Clair County.

When cross-examined, Jensen acknowledged that she was unfamiliar with the name or elements of the offense to which the plaintiff had pled guilty. She nevertheless believed that the offense was an impeachable offense under Illinois law. Jensen indicated that her belief that the offense was an impeachable offense was based on the *Zambrana* order. Jensen indicated that she did not personally know the plaintiff, and she acknowledged that other than the plaintiff's conviction, she was not aware of any other way in which the plaintiff could be impeached. She further acknowledged that whether the plaintiff's conviction would be admissible for impeachment purposes in Madison County would ultimately be determined by a judge and that her office had not attempted to have a judge determine whether the plaintiff's conviction would in fact be admissible. Jensen indicated that her office generally discloses a witness's entire criminal history and that the exclusion of material inappropriate for impeachment purposes is then sought by motion *in limine*.

Scott Williams testified that he had recently been appointed chief of the Collinsville police department and that the plaintiff had been a patrol officer for the City of Collinsville since early 2000. Williams testified that in light of the opinions expressed by Haida and Jensen, he did not believe that the plaintiff could effectively function as a Collinsville police officer. He indicated that all Collinsville police officers are expected to make arrests and that an officer who would not be called to testify in court would be of no use to the department.

When cross-examined, Williams stated that his predecessor had suspended the plaintiff and that he had unsuccessfully tried to rescind the suspension when he became chief. He testified that the only issue

that he had with the plaintiff was that the State's Attorneys of Madison and St. Clair Counties were not willing to prosecute cases in which he would be a material witness. When asked if he would have liked to have seen the State's Attorneys present a "test case" to determine whether evidence of the plaintiff's conviction could be used for impeachment purposes, Williams stated, "I would have liked to have seen [the plaintiff] come back to work." He testified that the plaintiff was a decorated officer who had "made a mistake" by selling the knockoff sunglasses, and he identified several documents as commendation letters from the plaintiff's personnel file. Williams acknowledged that he himself had purchased knockoff sunglasses from the plaintiff and that he did not realize that selling the glasses was illegal until Oakley had lodged a complaint.

The plaintiff testified that he had been a police officer for the City of Belleville for 6½ years before he began working for the Collinsville police department in 2000. The plaintiff testified that, in addition to being a police officer, he ran a business called All Pro Services, which primarily makes and sells T-shirts but, at some point, also began selling knockoff Oakley sunglasses. The plaintiff stated that he considered knockoff sunglasses to be different from counterfeit sunglasses in that a counterfeit item is "made to look identical to the authentic one, and it's passed off as being the original item," whereas a knockoff item is "something that is similar" but is "sold at a much cheaper price." The plaintiff explained that his business began selling knockoff Oakley sunglasses after he had met a vendor who had been selling them at an event in Madison, Illinois. The plaintiff testified that, prior to selling the sunglasses, he had contacted a United States Customs Service (Customs) agent and the Illinois State Police about the legality of doing so. After speaking with the Customs agent, the plaintiff concluded that it was not illegal to sell the sunglasses. Thereafter, the plaintiff sold the sunglasses for $5 to $10 per pair on an "on and off" basis, generally via racks located in convenience stores. The racks advertised the sunglasses as "Designer Alternatives," and the plaintiff testified that he had never represented to anyone that the knockoff sunglasses were genuine Oakley sunglasses. He had also sold the sunglasses to members of the Collinsville police department, including Chief Williams and other superior officers. After he was questioned by the FBI about his sales of the sunglasses and he learned that selling them was illegal, he turned over all the knockoff sunglasses that he had and agreed to assist in efforts to arrest the individual who had supplied him with them. At one point, the plaintiff was supposed to fly to New York to meet with the supplier, but the investigation was compromised. The plaintiff indicated that before he entered his guilty plea in federal

court, he was concerned about his career as a police officer but was advised that the crime to which he had pled guilty was not an impeachable offense. The plaintiff testified that he had sold the knockoff sunglasses to raise extra money for his family but that he would not have sold them had he known that doing so was illegal. The plaintiff indicated that he wanted to continue being a police officer for the City of Collinsville and that he believed that the State's Attorneys' unwillingness to prosecute cases in which he would be called as a witness was unreasonable.

When cross-examined, the plaintiff denied having ever sold the sunglasses "in a manner to make them appear to be real Oakley sunglasses" and denied having ever sold the sunglasses while on duty. He admitted, however, that he had "never requested any permission from Oakley to sell sunglasses that looked like Oakley sunglasses."

In a closing statement to the Board, counsel for the City of Collinsville maintained that, because the State's Attorneys of Madison and St. Clair Counties believed that the plaintiff was "damaged goods," they would not prosecute his cases and he was therefore unable to effectively serve as a police officer. Counsel argued that, under the circumstances, there was cause to dismiss the plaintiff.

Counsel for the plaintiff argued that the State's Attorneys' legal opinions were "flawed" because the offense to which the plaintiff had pled guilty is not an impeachable offense under Illinois law. Counsel also offered to brief the issue of whether the offense is an impeachable offense under Illinois law. Counsel conceded that the plaintiff had "made a mistake" but maintained that "it should not be a career ender." Counsel urged the Board to ask the State's Attorneys to "test this" and to not act on speculation.

In rebuttal, counsel for the City of Collinsville stated that, if the Board did not discharge the plaintiff, it would "be putting a police officer back on the street who cannot fully perform police duties." Counsel argued that "cause has been shown for dismissal and nothing short of dismissal would be appropriate."

After briefly deliberating in executive session, the Board found the plaintiff guilty of misconduct and determined that the consequences of his misconduct constituted cause warranting his dismissal. The Board then announced that a written decision would follow.

In April 2006, the Board issued its final administrative decision formally discharging the plaintiff from the Collinsville police department. The Board found that the plaintiff had pled guilty to the federal misdemeanor charge alleging he had violated 15 U.S.C. §13a (2000) and that, in the *Zambrana* order, the district court had determined that, because the conduct underlying the charge involved dishonesty

or false statements, the conviction would be admissible to impeach the plaintiff's credibility. The Board then discussed Haida's and Jensen's testimony regarding the "practical effect" that the plaintiff's conviction would have on their decisions to prosecute cases in which he would be a material witness and Williams' testimony that, "based upon the opinions of State's Attorneys Haida and Jensen," the plaintiff would be unable to "function effectively" as a Collinsville police officer. The Board acknowledged that "there has never been a 'test case' presented in either St. Clair or Madison County to determine whether a trial judge would find [that] the facts and circumstances surrounding [the plaintiff's] conviction possessed sufficient legal muster to permit the conviction to be admitted into evidence," but it explained that the fact that the decision of whether to admit evidence of a conviction for impeachment purposes is done on a case-by-case basis would render the decision to prosecute a particular case "more problematic, rather than less so." The Board further acknowledged, but deemed unpersuasive, the plaintiff's suggestion that "since no judge (other than [the author of the *Zambrana* order]) has ruled the conviction to be admissible, this Board cannot conclude [that] courts will admit the conviction into evidence in future cases or that prosecutors will decline to prosecute cases where [the plaintiff] would be a witness." As for the plaintiff's continued employment, the Board held as follows:

> "It is axiomatic that one of the primary duties of a police officer is to testify in court. It is equally clear that if a police officer is unable to testify, that shortcoming would render that officer's continuance as an officer detrimental to the efficiency of the police force and to the prosecution of law breakers generally. It is a shortcoming which the law and sound public opinion would recognize as good cause for the individual to no longer hold the position of police officer."

The Board noted that, the charges against him aside, the plaintiff had been "an exemplary police officer."

Pursuant to section 10—2.1—17 of the Illinois Municipal Code (65 ILCS 5/10—2.1—17 (West 2006)), the plaintiff subsequently sought judicial review of the Board's final administrative decision pursuant to the Administrative Review Law (735 ILCS 5/3—101 *et seq.* (West 2006)) in the circuit court of Madison County. In his "Complaint for Administrative Review," the plaintiff argued that the Board's decision was based on "unreasonable speculation" because "[n]o evidence was presented that the elements of 15 U.S.C. [§]13a involve dishonesty or falsification" and no evidence establishing that he had in fact pled guilty to an impeachable offense was ever presented. In response, the defendants requested that the circuit court affirm the Board's decision and grant a summary judgment in their favor.

In August 2007, the circuit court held a hearing on the plaintiff's complaint. At the hearing, counsel for the plaintiff argued that the district court's finding that the plaintiff had pled guilty to an impeachable offense was *dicta* that no one had bothered to question. Counsel maintained that because neither the Board nor the State's Attorneys had independently determined the accuracy of the district court's conclusion on the matter, the Board's finding of cause was arbitrary and unreasonable.

Stating that the Board "did not feel good about having to make the decision that [it] made," counsel for the Board acknowledged that the *Zambrana* order "set in motion this series of events that culminated in [the plaintiff] being dismissed from the police force." Counsel then argued that, in light of the district court's determination that the plaintiff had pled guilty to an impeachable offense, the State's Attorneys rightfully believed that the plaintiff was an impeachable witness.

In September 2007, the circuit court affirmed the Board's decision to terminate the plaintiff's employment and granted a summary judgment in favor of the defendants. In its order, the court agreed with the Board's determination that, because the State's Attorneys testified that they would not prosecute cases in which they would have to rely on the plaintiff's testimony, the plaintiff would not be called upon to testify as a police officer and was therefore unable to perform one of the primary requirements of service as a police officer. In October 2007, the plaintiff filed a timely notice of appeal.

## ANALYSIS

On appeal, the plaintiff contends that the Board's decision to terminate his employment should be reversed because neither the Board nor the State's Attorneys independently determined whether his federal conviction could be used to impeach his credibility in the circuit courts of Madison and St. Clair Counties. The plaintiff argues that the district court's *Zambrana* order did not conclusively dispose of the issue and should not have been treated as if it had. The plaintiff reasons that, because the State's Attorneys based their opinions on the *Zambrana* order and because the Board based its decision on the State's Attorneys' opinions, if the district court's findings are unsustainable, then the Board's decision is also unsustainable. In response, the defendants maintain that the Board's decision is amply supported by the evidence presented for its consideration.

"A police officer may not be discharged except for cause." *Clark v. Board of Fire & Police Commissioners*, 245 Ill. App. 3d 385, 393 (1993); see also 65 ILCS 5/10—2.1—17 (West 2006). "Cause" has been defined

as " 'some substantial shortcoming which renders [the employee's] continuance in his office or employment in some way detrimental to the discipline and efficiency of the service and something which the law and a sound public opinion recognize as a good cause for his not longer occupying the place.' " *Walsh v. Board of Fire & Police Commissioners*, 96 Ill. 2d 101, 105 (1983), quoting *Fantozzi v. Board of Fire & Police Commissioners*, 27 Ill. 2d 357, 360 (1963). "The scope of a court's review of an agency's decision to discharge is generally a two-step process." *Ehlers v. Jackson County Sheriff's Merit Comm'n*, 183 Ill. 2d 83, 89 (1998). The first step is to "determine if the agency's findings of fact are contrary to the manifest weight of the evidence," and the second is to "determine if the findings of fact provide a sufficient basis for the agency's conclusion that cause for discharge does or does not exist." *Department of Mental Health & Developmental Disabilities v. Civil Service Comm'n*, 85 Ill. 2d 547, 550, 551 (1981). Under this standard, an agency's finding of cause will be reversed "only if it is arbitrary and unreasonable or unrelated to the requirements of the service." *Walsh*, 96 Ill. 2d at 105. Because our review of the Board's decision is governed by the Administrative Review Law, however (see 65 ILCS 5/10—2.1—17 (West 2006); 735 ILCS 5/3—101 *et seq.* (West 2006)), "[t]he applicable standard of review depends upon whether the question presented is one of fact, one of law, or a mixed question of fact and law." *American Federation of State, County & Municipal Employees, Council 31 v. Illinois State Labor Relations Board, State Panel*, 216 Ill. 2d 569, 577 (2005). A case presents a mixed question of fact and law if it "involves an examination of the legal effect of a given set of facts," and mixed questions of fact and law are examined under the "clearly erroneous standard of review." *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205 (1998). "A decision is 'clearly erroneous' when the reviewing court is left with the definite and firm conviction that a mistake has been committed." *American Federation of State, County & Municipal Employees, Council 31*, 216 Ill. 2d at 577-78. Although the clearly erroneous standard is viewed as "highly deferential, it does not relegate judicial review to mere blind deference of an agency's order." *Board of Trustees of the University of Illinois v. Illinois Labor Relations Board*, 224 Ill. 2d 88, 98 (2007). "When reviewing a final decision under the Administrative Review Law, we review the Board's decision and not the circuit court's determinations." *Stec v. Board of Trustees of the Oak Park Police Pension Fund*, 355 Ill. App. 3d 974, 978 (2005).

Here, the propriety of the Board's decision turns on whether the plaintiff's federal conviction has in fact rendered his credibility subject to impeachment in the circuit courts of Madison and St. Clair Coun-

ties. If it has, then the Board's finding of cause is neither arbitrary and unreasonable nor unrelated to the requirements of his position. The State's Attorneys indicated that, in light of the plaintiff's conviction and the district court's finding that evidence of the conviction could be used for impeachment purposes, they would not prosecute cases in which the plaintiff would be a material witness due to concerns about his impeachability, and Chief Williams testified that an officer who would not be called to testify in court would be of no use to the City of Collinsville police department. If, on the other hand, the plaintiff's conviction has not left the plaintiff's credibility vulnerable to impeachment in the circuit courts of Madison and St. Clair Counties, then the State's Attorneys' opinions and the Board's decision were, albeit understandably, based on a misapprehension of law. We must therefore determine whether the plaintiff's conviction has in fact rendered his credibility subject to impeachment in the circuit courts of Madison and St. Clair Counties, which we view as involving a mixed question of fact and law.

The plaintiff was convicted of "Selling of Goods in Commerce at Unreasonably Low Prices Eliminating Competition" in violation of 15 U.S.C. §13a (2000). Codified under the "Monopolies and Combinations in Restraint of Trade" provisions of the United States Code (see 15 U.S.C. §13a (2000)), 15 U.S.C. §13a (2000) was enacted to criminally penalize "monopolist—predatory pricing" (*United States v. National Dairy Products Corp.*, 372 U.S. 29, 34, 9 L. Ed. 2d 561, 566, 83 S. Ct. 594, 598 (1963)). 15 U.S.C. §13a (2000) specifically provides as follows:

"Discrimination in rebates, discounts, or advertising service charges; underselling in particular localities; penalties

It shall be unlawful for any person engaged in commerce, in the course of such commerce, to be a party to, or assist in, any transaction of sale, or contract to sell, which discriminates to his knowledge against competitors of the purchaser, in that, any discount, rebate, allowance, or advertising service charge is granted to the purchaser over and above any discount, rebate, allowance, or advertising service charge available at the time of such transaction to said competitors in respect of a sale of goods of like grade, quality, and quantity; to sell, or contract to sell, goods in any part of the United States at prices lower than those exacted by said person elsewhere in the United States for the purpose of destroying competition, or eliminating a competitor in such part of the United States; or, to sell, or contract to sell, goods at unreasonably low prices for the purpose of destroying competition or eliminating a competitor.

Any person violating any of the provisions of this section shall, upon conviction thereof, be fined not more than $5,000 or imprisoned not more than one year, or both." 15 U.S.C. §13a (2000).

As stated in the plea agreement between the plaintiff and the United States Attorney, the elements of the plaintiff's 15 U.S.C. §13a (2000) violation were that (1) he was engaged in commerce, (2) in the course of commerce he sold goods at unreasonably low prices, and (3) he did so for the purpose of destroying competition or eliminating a competitor.

In the *Zambrana* order, after acknowledging that "the *elements* required to prove a violation of 15 U.S.C. §13(a) [*sic*] do not expressly mention dishonesty or false statements" (emphasis in original), the district court determined that the plaintiff's conviction would nevertheless be admissible to attack his credibility pursuant to Federal Rules of Evidence 608(b) and 609(a)(2). *Zambrana*, 402 F. Supp. 2d at 958-59. Rule 608(b) gives the district court the discretion to allow a party to cross-examine a witness regarding specific instances of the witness's conduct "for the purpose of attacking or supporting the witness'[s] character for truthfulness" so long as the conduct is "probative of truthfulness or untruthfulness" (Fed. R. Evid. 608(b)), and Rule 609(a)(2) provides that a witness may be impeached with evidence of a misdemeanor conviction "if it readily can be determined that establishing the elements of the crime required proof or admission of an act of dishonesty or false statement by the witness" (Fed. R. Evid. 609(a)(2)). Emphasizing that the stipulated facts underlying the plaintiff's conviction stated that the plaintiff had sold sunglasses that were " '*sold to look like Oakley sunglasses*' " (emphasis in original), the district court found that the plaintiff had "pled guilty to unlawfully selling goods which were represented to be something they were not" and had thereby admittedly "engaged in misrepresentation, deceit, and falsification." *Zambrana*, 402 F. Supp. 2d at 958-59. The district court therefore concluded that the plaintiff's conviction involved specific instances of conduct that would be admissible under Rule 608(b) and that the conviction further constituted an offense involving dishonesty or false statement under Rule 609(a)(2). *Zambrana*, 402 F. Supp. 2d at 958-59.

At the outset, we note that neither we nor the circuit courts of Madison and St. Clair Counties are bound to follow the district court's *Zambrana* order. Although "such decisions can provide guidance and act as persuasive authority" (*Lucas v. Taylor*, 349 Ill. App. 3d 995, 1002-03 (2004)), Illinois state courts "are not bound to follow decisions of the federal district courts" (*Hinterlong v. Baldwin*, 308 Ill. App. 3d 441, 452 (1999)). Moreover, Illinois courts are not bound by the Federal Rules of Evidence. *People v. Yost*, 65 Ill. App. 3d 386, 390 (1978), *aff'd on other grounds*, 78 Ill. 2d 292 (1980). We further note that the district court's observations regarding the plaintiff's impeach-

ability under Rules 608(b) and 609(a)(2) are ostensibly nonauthoritative *dicta* because it appears that they were "not essential to the disposition of the case" (*John Deere Insurance Co. v. Allstate Insurance Co.*, 298 Ill. App. 3d 371, 378 (1998)).

■ That we are not bound to follow the *Zambrana* order aside, we are not convinced that the district court's finding that the plaintiff committed an offense involving dishonesty or false statement is supported by its declarations or the record in the present appeal. As previously noted, the district court determined that, because the stipulated facts underlying the plaintiff's guilty plea established that he had sold sunglasses that were " '*sold to look like Oakley sunglasses*' " (emphasis in original), he had "pled guilty to unlawfully selling goods which were represented to be something they were not" and had thereby admittedly "engaged in misrepresentation, deceit, and falsification." *Zambrana*, 402 F. Supp. 2d at 958-59. We can discern a distinct difference, however, between selling an item that is "sold to look like" another item and selling an item that is "represented to be something" that it is not. In the present case, for example, it is undisputed that while authentic Oakley sunglasses sell for $100 to $300 per pair, the plaintiff's knockoff sunglasses were sold for $5 to $10 per pair, primarily on racks that advertised the sunglasses as "Designer Alternatives," not Oakleys. Additionally, the plaintiff's undisputed testimony was that he had never represented to anyone that the knockoff sunglasses were genuine Oakleys. Under the circumstances, one could therefore conclude that the plaintiff had not "pled guilty to unlawfully selling goods which were represented to be something they were not" and had not committed an offense involving dishonesty or false statement. Ultimately, however, we need not decide this aspect of the issue because we cannot look beyond the elements of the offense as the district court did.[1] Additionally, Illinois does not have an evidentiary rule equivalent to Rule 608(b), as "specific-act

---

[1] Some federal courts have held that, for purposes of Rule 609(a)(2), "the manner in which a particular defendant commits a crime is irrelevant; what matters is whether dishonesty or false statement is an element of the statutory offense." *Cree v. Hatcher*, 969 F.2d 34, 38 n.2 (3d Cir. 1992), citing *United States v. Lewis*, 626 F.2d 940, 946 (D.C. Cir. 1980); see also *Tussel v. Witco Chemical Corp.*, 555 F. Supp. 979, 982 (W.D. Pa. 1983). Others, including the Seventh Circuit, " 'have adopted the rule that, when the statutory offense of which the witness was convicted does not require proof of fraud or deceit as an essential element of the crime, a prior conviction may yet be admitted under Rule 609(a)(2) if the proponent of the evidence bears the burden of showing that the conviction " ' rested on facts warranting the dishonesty or false statement description.' " ' " *United States v. Carroll*, 663 F. Supp. 210,

impeachment is *prohibited* in Illinois." (Emphasis in original.) *People v. Santos*, 211 Ill. 2d 395, 404 (2004); see also *Podolsky & Associates L.P. v. Discipio*, 297 Ill. App. 3d 1014, 1026 (1998) (rejecting the invitation to adopt Rule 608(b), by noting, *inter alia*, that, "[i]n Illinois[,] a witness's credibility may not be impeached by inquiry into specific acts of misconduct").

Under Illinois law, the impeachment of a witness with evidence of a prior conviction is governed by the proposed draft of Rule 609 of the Federal Rules of Evidence, which the Illinois Supreme Court adopted in *People v. Montgomery*, 47 Ill. 2d 510 (1971). See *People v. Cox*, 195 Ill. 2d 378, 383 (2001). Although federal Rule 609 was ultimately enacted in different form, the *Montgomery* rule "has remained the touchstone for admitting evidence of [a witness's] prior convictions in Illinois." *Cox*, 195 Ill. 2d at 383 n.1; see also *People v. Naylor*, 229 Ill. 2d 584, 596 (2008) ("[T]his court did not intend that the standards for impeachment announced in *Montgomery* would change to correspond to Federal Rule 609 as enacted. This court intended that the provisions of proposed Rule 609, as adopted in *Montgomery*, should be followed in future cases"). "The *Montgomery* rule applies to all witnesses at a trial, whether it is civil or criminal." *People v. Blackwell*, 76 Ill. App. 3d 371, 379 (1979); see also *People v. Gandy*, 227 Ill. App. 3d 112, 127-28 (1992).

"Under *Montgomery*, evidence of a prior conviction is admissible for impeachment purposes if: (1) the witness'[s] crime was punishable by death or imprisonment for more than one year, or the crime involved dishonesty or false statement regardless of the punishment; (2) the witness'[s] conviction or release from confinement, whichever date is later, occurred less than 10 years from the date of trial; and (3) the danger of unfair prejudice does not substantially outweigh the probative value of the conviction." *People v. Harvey*, 211 Ill. 2d 368, 383 (2004). The third *Montgomery* factor requires the trial court to conduct a balancing test that includes consideration of "the nature of the prior conviction" and the "circumstances surrounding the prior conviction." *People v. Atkinson*, 186 Ill. 2d 450, 456 (1999).

Under *Montgomery*, "[t]he terms 'dishonesty' and 'false state-

214 (D. Md. 1986), quoting *United States v. Papia*, 560 F.2d 827, 847 (7th Cir. 1977), quoting *United States v. Hayes*, 553 F.2d 824, 827 (2d Cir. 1977), quoting *United States v. Smith*, 551 F.2d 348, 364 n.28 (D.C. Cir. 1976); see also *United States v. Lipscomb*, 702 F.2d 1049, 1064 (D.C. Cir. 1983). We must, of course, look to Illinois law to determine whether the plaintiff's conviction would be admissible to impeach his credibility in the circuit courts of Madison and St. Clair Counties. See *Yost*, 65 Ill. App. 3d at 389-90.

ment' refer to crimes such as perjury, subornation of perjury, false statement, criminal fraud, embezzlement, false pretenses, other offenses in the nature of *crimen falsi*, and theft." *People v. Atkinson*, 186 Ill. 2d 450, 465 (1999) (Rathje, J., dissenting, joined by McMorrow, J.). Under *Montgomery*, any misdemeanor "which has as its basis lying, cheating, deceiving[,] or stealing[ ] bears a reasonable relation to testimonial deceit and should be admissible for impeachment purposes." *People v. Spates*, 77 Ill. 2d 193, 204 (1979).

■ In *Knowles v. Panopoulos*, 66 Ill. 2d 585, 590 (1977), the supreme court held that when determining whether a witness's prior misdemeanor conviction was for a crime involving dishonesty or false statement for purposes of *Montgomery*, the facts surrounding the prior conviction are not to "be looked at," and only the crime "as defined by statute" should be considered. The appellate court has since consistently adhered to this holding. See *Podolsky & Associates L.P.*, 297 Ill. App. 3d at 1026 ("In determining whether a crime involves dishonesty or false statement under *** the *Montgomery* test, only the provision which the defendant is found to have violated is to be considered; the circumstances of the defendant's commission of the violation are not relevant"); *People v. Schuning*, 125 Ill. App. 3d 808, 815 (1984) ("Only the conviction itself, for the offense as defined by the statute, is to be considered in making this determination"), *rev'd on other grounds*, 106 Ill. 2d 41 (1985). Accordingly, in the circuit courts of Illinois, the facts and circumstances surrounding the commission of an offense are not to be considered when determining whether a conviction was for a crime involving dishonesty or false statement and are only relevant for purposes of *Montgomery* when determining whether the danger of unfair prejudice substantially outweighs the probative value of the conviction. See *Atkinson*, 186 Ill. 2d at 456; *Knowles*, 66 Ill. 2d at 590. Thus, as previously indicated, when determining whether the offense to which the plaintiff pled guilty involved dishonesty or false statement, we cannot look beyond the elements of the offense as the district court did.

Here, as defined by statute, the offense to which the plaintiff pled guilty, *i.e.*, "Selling of Goods in Commerce at Unreasonably Low Prices Eliminating Competition" in violation of 15 U.S.C. §13a (2000), is not a crime involving dishonesty or false statement. 15 U.S.C. §13a (2000) sets forth criminal penalties for monopolistic business practices (see *National Dairy Products Corp.*, 372 U.S. at 34, 9 L. Ed. 2d at 566, 83 S. Ct. at 598), but it does not have "as its basis lying, cheating, deceiving[,] or stealing" (*Spates*, 77 Ill. 2d at 204).

■ For the foregoing reasons, we hereby hold that the offense of "Selling of Goods in Commerce at Unreasonably Low Prices Eliminat-

ing Competition" in violation of 15 U.S.C. §13a (2000) does not constitute an offense involving dishonesty or false statement under the *Montgomery* rule. Evidence of the plaintiff's conviction in federal court would therefore be inadmissible to impeach his credibility in the circuit courts of Madison and St. Clair Counties.[2]

## CONCLUSION

We recognize that the State's Attorneys have the absolute discretion to decide whether to file charges in any particular case (see *People v. Urdiales*, 225 Ill. 2d 354, 445 (2007)), but here, the State's Attorneys indicated that they would not file charges in cases in which the plaintiff would be a material witness because of the impeachability concerns stemming from his federal conviction. Having determined that the plaintiff's federal conviction cannot be used to impeach his credibility in the circuit courts of Madison and St. Clair Counties, we can only conclude that the Board's decision, which was based on the State's Attorneys' opinions, was based on a misapprehension of the law. Accordingly, we are left with the firm and definite conviction that a mistake has been committed, and we hereby reverse the Board's decision to terminate the plaintiff's employment and the circuit court's order granting a summary judgment in favor of the defendants. The effect of our reversal is to restore the plaintiff to duty status with the Collinsville police department, and the proper disposition is to remand the matter to the Board so that it can consider "what action, if any, should be taken" (*Kreiser v. Police Board*, 69 Ill. 2d 27, 31 (1977)) in addition to the previously imposed term of suspension. Accordingly, we remand the plaintiff's cause to the Board for further consideration.

Reversed; cause remanded.

DONOVAN and STEWART, JJ., concur.

---

[2]As an aside, we note that the supreme court has held that *Brady v. Maryland*, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963), and its progeny do not require the State to disclose evidence that is inadmissible for impeachment purposes. See *People v. Pecoraro*, 175 Ill. 2d 294, 309-10 (1997).