SONIA CRUZ, Plaintiff-Appellee, v. THE COOK COUNTY SHERIFF'S MERIT BOARD *et al.*, Defendants-Appellants.

First District (3rd Division)    No. 1—08—2648

Opinion filed August 26, 2009.

Anita Alvarez, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and Donald R. Hallsten, Jr., Assistant State's Attorneys, of counsel), for appellants.

Ronald N. Cicinelli, of Law Office of Ronald N. Cicinelli, of Elmhurst, for appellee.

PRESIDING JUSTICE MURPHY delivered the opinion of the court:

Defendants Cook County Sheriff's Merit Board and its members (collectively, Board) and the former and present sheriff of Cook County (collectively, Sheriff) appeal from a decision of the circuit court reversing the Board's discharge of plaintiff Sonia Cruz from employment by the Sheriff. On appeal, defendants contend that the Board's findings were not contrary to the manifest weight of the evidence and that the Board acted reasonably in discharging plaintiff. Plaintiff responds that the Board erroneously disregarded an arbitration award finding that the policy under which she was discharged was unreasonable.

Plaintiff was employed by the Sheriff as a correctional officer since July 2002. In November 2006, the Sheriff filed a complaint with the Board seeking plaintiff's termination. The Sheriff alleged that, on

October 7, 2005, plaintiff was counseled about being in unauthorized no-pay status and informed that she could seek family medical leave or disability leave. However, she continued to use benefit leave time improperly, and she was reprimanded in writing on November 4, 2005, for being in unauthorized no-pay status. An investigation found on December 20, 2005, that plaintiff was in unauthorized no-pay status and recommended eight days' suspension. Her application on December 28 for family medical leave was denied because she had not worked enough hours to qualify. Three more investigations, on February 1, March 2, and March 23, 2006, found that plaintiff was in unauthorized no-pay status and recommended 13, 17, and 29 days' suspension, respectively. Lastly, plaintiff allegedly failed to report for duty in unauthorized no-pay status on March 26 and April 2, 3, and 8, 2006. The complaint alleged that these acts violated the Sheriff's general orders, specifically a requirement to be in authorized payroll status and prohibition on being in unauthorized no-pay status.

Plaintiff filed a motion before the Board to dismiss the Sheriff's complaint. She alleged that the Sheriff and the union representing Sheriff's correctional officers had engaged in arbitration under a collective bargaining agreement. In the arbitration, the union alleged that the Sheriff's unilateral adoption of a new attendance policy regarding unauthorized no-pay status (the Policy) violated the agreement. The arbitrator issued an award in January 2007 (the Award) finding that the Sheriff adopted the Policy in a proper manner. The Policy covered all officers absent from work without authorization, whatever the reason for their absence, and the arbitrator expressly agreed in the Award that the changes in the Policy were justified "by a *serious absenteeism condition*." (Emphasis in original.) The Award detailed the reasons for the Policy, including a federal court decree requiring the Sheriff to alleviate acute understaffing at the jail that aggravated inmate overcrowding.

Having found that the Policy was properly adopted and not contrary to the collective bargaining agreement, the arbitrator went further and found that the Policy was unreasonable because its series of successively longer suspensions was punitive rather than remedial. Thus, in the Award, the arbitrator retained jurisdiction to determine disputes regarding application of the Award and ordered that "[o]fficers are to be made whole for any loss of pay or benefits" resulting from application of the Policy. Plaintiff was alleged in the Sheriff's complaint to have violated the Policy, and she argued in her motion to dismiss that the Award was binding on the Sheriff and Board.

The Sheriff responded to the motion to dismiss, arguing that the Sheriff has discretion to bring disciplinary complaints to the Board

and that the Award did not deprive the Sheriff of that discretion. The Sheriff also argued that the arbitrator exceeded his authority in issuing the Award, arguing that the arbitrator was referred the question of whether the Sheriff duly adopted the Policy or had to first notify and consult with the union. The Sheriff argued that the issue of the discipline of individual correctional officers was not before the arbitrator, nor could it have been under the collective bargaining agreement.

The Board denied the motion to dismiss in May 2007 and the case proceeded to a hearing in June 2007. The parties stipulated to the admission of the relevant rules and general orders of the Sheriff and to plaintiff's time records from 2004 through 2006.

Carl Singletary, investigator for the Sheriff's inspector general, testified that he investigated plaintiff regarding her unauthorized no-pay status. His investigation reports were admitted into evidence without objection. Singletary was familiar with the Policy, which provides that an employee who reports in sick but does not have sufficient sick days due will be disciplined. The employee will first be counseled, then reprimanded in writing, then referred to the inspector general for investigation. An employee is allowed five such investigations, and for each investigation the employee receives due notice of the allegations against him. If an employee has used all his sick days, it is irrelevant that he has a legitimate medical excuse for not attending work, because he is informed at the first (counseling) stage that he may apply for family medical leave or disability leave.

The Policy began as a procedure of the Sheriff's director of personnel in March 2005, and a memorandum describing the Policy was sent by the director to all department heads to be read to all employees. However, Singletary did not know whether all department heads had read the memorandum to all employees. The Policy was later adopted as a general order of the Sheriff in March 2006, and Singletary explained that all officers are expected to be aware of all general orders. The Sheriff's policy before the Policy, as Singletary recalled it, was that an officer was "precluded *** from being disciplined excessively" for calling in sick without accrued sick leave if he produced a physician's statement excusing his absence.

Plaintiff's time records indicated that she was absent a total of 25 days from October 2005 to April 2006 having called in sick but without accrued sick days; that is, with a notation of NST (no sick time). Due to one day of such absence in October 2005, plaintiff was in that same month counseled, including being informed of the options of family medical leave or disability leave. She later signed a statement acknowledging that she had been so counseled and informed. Plaintiff applied for family medical leave, but it was denied because she had not

worked enough hours in the preceding year, and her record indicated that she did not apply for disability leave. After counseling, plaintiff was given a written reprimand for being in unauthorized no-pay status on one day in November 2005, and she signed the reprimand. Plaintiff was then investigated 5 times: (1) in December 2005 for 6 days' absence in November and December, with a recommended eight days' suspension; (2) in February 2006 for 6 days' absence in December and January, with a recommended 13 days' suspension; (3) in early March 2006 for 3 days' absence in February, with a recommended 17 days' suspension; (4) in late March for 4 days' absence in March, with a recommended 29 days' suspension; and (5) in April 2006, with a recommendation of discharge, for 4 days' absence in March and April.

Plaintiff testified on her own behalf that she was unaware of the Policy because until September 2005, she had been off work due to injuries, requiring surgery, from a 2003 attack by a jail inmate. Her supervisors did not inform her of the Policy upon her return to work. She thus believed that the old policy was in effect, under which she could submit a medical statement to support her absence. While she was informed in the initial counseling stage and the written reprimand that she had abused medical leave by taking too many sick days, the Policy was not explained to her. Similarly, while she was informed in counseling that she could apply for family medical leave, she was not told she could apply for disability leave.

For the days she called in sick, plaintiff obtained notes from a physician and submitted them to her supervisors. Plaintiff applied for family medical leave four times, but was denied each time because she had not worked sufficient hours in the preceding year. When she asked the personnel office if she had any other options, she was told there were none. When plaintiff was suspended in December 2005 for eight days, she believed it was for abuse of medical leave. Plaintiff was not suspended after that, and she was unaware of the subsequent recommendations of suspension.

On cross-examination, plaintiff admitted that she was told in counseling and in her written reprimand that she had taken a sick day without sick days accrued. When she asked her supervisors and union representative why she received written discipline when she had applied for family medical leave as suggested, they told her that she would not be disciplined so long as she presented a physician's note for her absences. Similarly, when she was investigated, Singletary did not tell her about the Policy, but did tell her that she was accused of taking medical leave she was not due.

The hearing ended with closing arguments. On July 25, 2007, the Board found that plaintiff had violated the specified regulations and ordered that she be discharged from employment by the Sheriff effective November 17, 2006.

Plaintiff timely petitioned the circuit court for administrative review of the Board's decision, alleging that it was arbitrary and capricious, against the manifest weight of the evidence, and legally erroneous.

Following briefs by the parties, the court issued an order in the instant case on July 25, 2008, reversing the Board's decision and ordering that plaintiff "be made whole with all benefits restored." This appeal timely followed.

While the instant appeal was pending, the union appealed the circuit court's partial *vacatur* of the Award. *Metropolitan Alliance of Police, Cook County Correctional Officers Chapter 222 v. County of Cook*, No. 1—08—0282 (2008) (unpublished order under Supreme Court Rule 23). We found that "the only issue before [the arbitrator] was whether [Sheriff's] unilateral implementation of the [Policy] violated the collective bargaining agreement between the parties. *** The issue was not, was there just cause for discipline faced by particular officers pursuant to the [Policy.]" *Metropolitan Alliance of Police*, slip op. at 8.

"[I]t is clear to us that discipline was not an issue subject to arbitration here. Rather, the arbitrator's powers were limited to reviewing only the validity of the [Sheriff's] unilateral implementation of the [Policy]; the make-whole provision of the arbitrator's award was in excess of his authority." *Metropolitan Alliance of Police*, slip op. at 9.

Moreover, "even if officer discipline under the [Policy] had been submitted as an issue upon arbitration, this would have been improper pursuant to the [collective bargaining] agreement between the parties." *Metropolitan Alliance of Police*, slip op. at 10.

On appeal, defendants contend that the Board's findings were not contrary to the manifest weight of the evidence and that the Board acted reasonably in discharging plaintiff. Plaintiff in turn contends that the Board erroneously disregarded the Award in denying her motion to dismiss.

A Sheriff's correctional officer may not "be removed, demoted or suspended except for cause, upon written charges filed with the Board by the Sheriff and a hearing before the Board thereon," where the officer has the right to present evidence and argument. 55 ILCS 5/3—7012 (West 2006). "Cause" is a substantial shortcoming that renders continuance in office detrimental to the discipline and efficiency of the service, or something that the law and sound public opinion recognize

as good cause for no longer occupying office. *Ehlers v. Jackson County Sheriff's Merit Comm'n*, 183 Ill. 2d 83, 89 (1998); *Reichert v. Board of Fire & Police Commissioners*, 388 Ill. App. 3d 834, 842-43 (2009). It is axiomatic that violation of a single rule may constitute a sufficient basis for discharge. *Siwek v. Police Board*, 374 Ill. App. 3d 735, 738 (2007).

We review the Board's decision rather than the decision of the circuit court. *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 531 (2006); *Reichert*, 388 Ill. App. 3d at 843. Our review of a discharge for cause has two stages: first, we review the Board's finding of guilt, reversing only if it was against the manifest weight of the evidence; then, we review the Board's finding that said guilt was a sufficient cause for discharge, reversing only if it was arbitrary and unreasonable or was unrelated to the requirements of the service. *Ehlers*, 183 Ill. 2d at 89; *Reichert*, 388 Ill. App. 3d at 843. We do not reweigh the evidence or substitute our judgment for that of the Board, but instead affirm when the record contains evidence supporting the Board's decision. *Marconi*, 225 Ill. 2d at 534; *Siwek*, 374 Ill. App. 3d at 738. Similarly, the Board need not give mitigating evidence such weight as to decide against discharge, so that discharge in a case where mitigating evidence was presented is not *per se* arbitrary or unreasonable. *Siwek*, 374 Ill. App. 3d at 738-39.

Here, we must first address whether the Board erred in denying plaintiff's motion to dismiss, in which she argued that the Award was binding on the Sheriff and Board in the instant case. However, this court vitiated all provisions of the Award beyond the arbitrator's finding that the Policy was duly adopted and not contrary to the collective bargaining agreement. *Metropolitan Alliance of Police*, slip op. at 8-10. Because our order is indisputably binding upon the Award, any binding effect plaintiff seeks to derive from the Award is without merit. The Board thus did not err in denying the motion to dismiss.

We also conclude that the Board's finding that plaintiff violated the Policy was not against the manifest weight of the evidence. In about 6 months, plaintiff called in sick on 25 days without having accrued sick days. While she provided medical notes for these absences, they were irrelevant under the Policy, since establishing that she was actually sick did not negate the fact that she had no more sick days.

While plaintiff admitted knowing that she was accused of taking sick days when she had no sick days accrued (which is another way of describing unauthorized no-pay status) she maintained that she was unaware of the Policy. Specifically, she was unaware that (1) medical notes would not bar her discipline, and (2) she could apply for disability leave. This may have been so when she first returned to work

in September 2005 after her long absence, as this would have been well after the memorandum creating the Policy and before the Policy was adopted as a general order. However, Singletary's testimony and the documentation of plaintiff's disciplinary process, from counseling and written reprimand through five investigations, expressly belie that she was not told she could apply for disability leave and implicitly refute her unawareness that medical notes were not a defense. In other words, as the discipline process proceeded, it should have been increasingly evident to her that her medical notes were not stopping the Sheriff from seeking further discipline. While plaintiff testified that she was unaware of the three recommendations of suspension following her eight-day suspension, as she served no other suspension, the record establishes that she was notified of each investigation and of the allegations against her.

Turning to the propriety of plaintiff's discharge, we see nothing arbitrary or unreasonable in prescribing those multiple unauthorized absences from work, following earlier and repeated discipline for the same, will result in the termination of employment. We do not consider the Award particularly persuasive on this point: while the Award (inappropriately) addressed this issue for the Policy in the abstract, the Board had, and this court has, a particular case to consider. While plaintiff was first counseled and then reprimanded for violations of one day each, she was suspended eight days for six days of unauthorized absence, which does not strike us as disproportionate. Indeed, all five of her investigations were for multiple days of absence, dispelling the specter of an officer being disciplined through the seven steps of the Policy for a mere seven days of unauthorized absence. Moreover, while increasing suspensions were recommended for her repeated violations—which again does not strike us as unreasonable—she did not serve any further suspensions, thus avoiding the deleterious effect of absence compounding absence described in the Award.

We also find nothing unreasonable about the Policy's proviso that medical notes for unauthorized sick days do not excuse them. The Policy provides two alternatives to an officer's expended sick days— family medical leave and disability leave—and provides that an officer will be informed of these options before any further disciplinary steps. As stated above, the record establishes that plaintiff was informed of these options but did not apply for disability.

In summary, we conclude that the Board's findings were not contrary to the manifest weight of the evidence and that the Board acted reasonably in discharging plaintiff. The circuit court's reversal of the Board's decision was therefore erroneous.

Accordingly, the judgment of the circuit court is reversed and the Board's order is confirmed.

Circuit court judgment reversed; Board order confirmed.

THEIS and QUINN, JJ., concur.